**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WATKINS MANUFACTURING CORPORATION,

Plaintiff,

v.

GUANGZHOU WEILI TRADING CO., LTD., *et al.*,

Defendants.

Lead Case No. 26-cv-04467-BAS-VET

Consolidated Cases:
Case No. 26-cv-04480-BAS-VET
Case No. 26-cv-04490-BAS-VET
Case No. 26-cv-04491-BAS-VET

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR ALTERNATIVE SERVICE OF PROCESS (Lead Case ECF No. 6) (Consolidated Cases ECF No. 8)**

On August 5, 2026, Plaintiff Watkins Manufacturing Corporation filed four separate patent infringement lawsuits against Chinese companies Guangzhou Weili Trading Co., Ltd. ("Weili"), Liuyang Guanyang Trading Co., Ltd. ("Liuyang"), Xinxiang Junhui Electrical Applicance & Power Co., Ltd. ("Xinxiang"), and Zhangxuxu (together, "Defendants"). (ECF No. 1; Consol. Cases ECF No. 1.) On October 8, 2026, this Court

consolidated all four cases before it and designated the Weili case as the lead case. (ECF No. 8.)[1]

Presently before the Court are Plaintiff's motions for alternative service of process on the four Defendants. (ECF No. 6 ("Lead Mot."); Consol. Cases ECF No. 8 ("Consol. Mots.").) None of the Defendants have appeared in this action, and thus no opposition papers have been filed. The Court finds Plaintiff's motions suitable for determination on the papers submitted. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). Upon review, the Court **GRANTS** the motions.

## I. BACKGROUND

Plaintiff filed complaints for patent infringement against Defendants on August 5, 2026. (ECF No. 1; Consol. Cases ECF No. 1.) A summons was issued on the same day. (ECF No. 2; Consol. Cases ECF No. 3.) Plaintiff claims Defendants each operate an Amazon.com "Storefront" where they allegedly sell products infringing on Plaintiff's registered patents.

Weili operates an Amazon Storefront selling allegedly infringing products under the "Kintillate" brand. (*See* ECF No. 7, Declaration of Emma K. Morehart ("Morehart Decl. A") ¶ 3.) Liuyang allegedly does the same under the "PRFCTTY" brand. (Liuyang ECF No. 9, Declaration of Emma K. Morehart ("Morehart Decl. B") ¶ 3.) Likewise for Xinxiang under the "Succlin" brand. (Xinxiang ECF No. 9, Declaration of Emma K. Morehart ("Morehart Decl. C") ¶ 3.) Finally, Zhangxuxu purportedly does the same under the "MELULUA" brand. (Zhangxuxu ECF No. 9, Declaration of Emma K. Morehart ("Morehart Decl. D") ¶ 3.)[2] No other sellers on Amazon list products under the Infringing

---

[1] For clarity, all standalone citations to the docket "(ECF No. X)" refer to those in the Weili lead case, No. 26-cv-4467. General references to identical docket entries for each of the consolidated cases will be referenced as "(Consol. Cases ECF No. X)." References to the docket of a particular consolidated case will be identified as follows: (1) for the *Liuyang* case, No. 26-cv-4480, "(Liuyang ECF No. X)"; (2) for the *Xinxiang* case, No. 26-cv-4490, "(Xinxiang ECF No. X)"; and (3) for the *Zhangxuxu* case, No. 26-cv-4491, "(Zhangxuxu ECF No. X)."

[2] Kintillate, PRFCTTY, Succlin, and MELULUA together will be referred to as the "Infringing Brands."

Brands, which suggests Defendants own and control their respective brands. (Morehart Decls. A–D ¶ 4.) Amazon Storefront operators are assigned a unique "Merchant ID" upon registration, a number that remains the same even when the name of the Storefront changes. (*Id.* ¶ 3.)[3]

Defendants do not display an email address, a physical address in the United States, or any other means for customers to contact them on their Amazon Storefronts. (*Id.* ¶ 5.) The only contact information provided on Defendants' Amazon Storefronts is an address in China written in Chinese characters. (Lead Mot. at 8; Consol. Mots. at 8–9.) As a result, Plaintiff was forced to undergo an extensive investigation into Defendants' whereabouts to effectuate service on them. Plaintiff investigated the addresses provided on Defendants' Storefronts using a wide array of tools, such as: a translation tool, general internet searches, social media, a paid subscription address verification tool, a database of registered companies and addresses in China, maps of China, and a Chinese vendor to verify information accessible only in China. (Morehart Decls. A–D ¶ 6.) These efforts were ultimately fruitless, leaving Defendants' physical addresses unverifiable. (*Id.* ¶ 7.)

Like all third-party sellers on the site, Defendants were required to set up an account with Amazon's messaging system to promote communication between Amazon, customers, and Defendants. (*Id.* ¶ 8.) The messaging system is used to communicate about "sales, product questions, refunds, fees, shipping, payments, and other critical business information." (*Id.*)

During Plaintiff's investigation, it uncovered Defendants had separately registered their Infringing Brands for trademarks with the United States Patent and Trademark Office ("USPTO"). (*Id.* ¶ 10.) The registration documents on file with the USPTO list a different company name and address for the trademark owner than the one listed on Defendants' Amazon Storefronts. (*Id.* ¶ 11.) As a precaution, Plaintiff's counsel sent a letter along with

[3] The unique Merchant IDs for Defendants are: (1) Weili – A1QLMGR9X8U0WQ; Liuyang – A1S7JES6JTV3PZ; (3) Xinxiang – A39W1S85F90B06; and (4) Zhangxuxu – AD77EXKV54K70. (Morehart Decls. A–D ¶ 3.)

copies of the complaint, summons, and other filed documents in the corresponding cases to U.S.-based trademark counsel listed in the USPTO registration documents for Weili, Liuyang, and Xinxiang. (Morehart Decls. A–C ¶ 12.)[4] Trademark counsel responded stating they do not represent Weili, Liuyang, or Xinxiang "in this matter." (*Id.*)

Plaintiff took further steps to notify Defendants of the suits against them. On September 8, 2026, Plaintiff's counsel sent copies of the complaint, summons, and other filed documents in the corresponding cases to Defendants via the Amazon messaging system. (Morehart Decls. A–D ¶ 13.) Plaintiff's counsel received confirmation from Amazon the message was sent to Defendants. (*Id.* ¶ 14.) Defendants seemingly received the message and marked it "resolved," as Amazon informed Plaintiff's counsel the inquiry had been "closed." (*Id.* ¶ 15.) Amazon sellers "often respond to or close inquiries within 24 hours of receipt to avoid potential detriment to their Amazon account. Amazon can also automatically close an inquiry if a seller does not take any action." (*Id.*) Plaintiff's counsel took the additional step of sending copies of the relevant documents to the email addresses associated with Kintillate's, Succlin's, and MELULUA's respective trademark owners listed in Chinese records—receiving no bounceback email or other error message. (Morehart Decls. A, C–D ¶ 16.)

Following Plaintiff's counsel's September 8, 2026 communication, Weili changed its business name and business address on its Amazon Storefront. (Morehart Decl. A ¶ 19.) Like previous business addresses listed, this new address is in Chinese. (*Id.* ¶ 21.) Plaintiff once again investigated this new business information using the same tools previously referenced. (*Id.* ¶ 22.) This second investigation identified a Chinese company registered in Chinese records with the same name and address listed on the Weili Amazon Storefront; however, the new business name and address did not match the information provided to the USPTO for Weili's "Kintillate" trademark. (*Id.* ¶¶ 23–24.) As a result, there does not

[4] It is unclear whether Plaintiff did the same for Zhangxuxu's MELULUA brand. (*See generally* Morehart Decl. D.) Plaintiff represents it was unable to verify the business name or address listed in Zhangxuxu's USPTO records. (*Id.* ¶ 12.)

appear to be any connection between the new business listed on the Weili Amazon Storefront and Weili. (*Id.* ¶ 25.)

With no response or appearance from Defendants following multiple attempts at service, Plaintiff sought relief in court and filed four motions for alternative service of process—one for each Defendant. (ECF No. 6; Consol. Cases ECF No. 8.) As Defendants have not appeared in this action, the Court now considers the requests made in the motions.

## II. LEGAL STANDARD

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(h)(2) permits service on a foreign corporation in the manner prescribed by Rule 4(f) for individuals. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4(f), in turn, authorizes service that is (1) directed by the court; and (2) not prohibited by international agreement. *See id.* (citing Fed. R. Civ. P. 4(f)(3)). "Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Id.* at 1015 (citation modified). Even where "facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Id.* at 1016.

In sum, to authorize alternative service under Rule 4(f)(3), the Court must find (1) the proposed method does not violate an international agreement; (2) it satisfies due process; and (3) it is necessary under the present circumstances. *See id.* at 1014–17.

## III. ANALYSIS

### A. International Agreement

The Court first determines whether the proposed methods of service are prohibited by international agreement. *See Rio Props.*, 284 F.3d at 1014. "The Hague Convention governs service of summons on defendants in foreign countries that are signatories to the treaty." *See Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1094 (N.D. Cal. 2009). China is a signatory to the Hague Convention. *See NJOY, LLC v. iMiracle (HK)*

*Ltd.*, No. 24-cv-00397-BAS-JLB, 2025 WL 1287779, at *2 (S.D. Cal. May 2, 2025). The language of the Hague Convention is mandatory, and a plaintiff must comply with it "in all cases to which it applies." *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Hague Convention, however, "does not apply 'where the address of the person to be served with the document is not known.'" *See Sec. & Exch. Comm'n v. CoinW6*, No. 24-cv-07924-ODW (ASX), 2025 WL 1191570, at *3 (W.D. Wash. Mar. 26, 2025) (citing Hague Convention, Art. 1)). "To show that a person's address is unknown, the moving party must show at least 'reasonably diligent efforts to learn the defendant's mailing address.'" *Id.* (quoting *Sec. & Exch. Comm'n v. Pithapurwala*, No. 21-cv-09384-PA (AFMx), 2022 WL 2199939, at *3 (C.D. Cal. Mar. 11, 2022)); *see also Anderson v. Bitmart, LLC*, No. 22-cv-01035-FWS (JDEx), 2022 WL 19076761, at *2 (C.D. Cal. Oct. 5, 2022) (finding repeated, unsuccessful attempts to determine defendant's address supports inapplicability of the Hague Convention).

Plaintiff was reasonably diligent in its efforts to learn Defendants' mailing addresses. As detailed above, *supra* Section I, Defendants are Chinese corporations that have provided either incomplete or misleading information as to their true business addresses. Plaintiff's counsel then engaged in a thorough, exhaustive investigation which—despite best efforts—failed to uncover a verifiable business address for any Defendant. (*See* Morehart Decls. A–D ¶¶ 3–17.) That is plainly sufficient to show reasonable diligence. The Court thus finds Defendants' addresses are not "known" within the meaning of the Hague Convention, rendering it inapplicable to the instant case. As a result, the Court may permit alternative service so long as the proposed methods comport with due process.

**B. Due Process**

To meet the constitutional due process requirement, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Props.*, 284 F.3d at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Plaintiff seeks to serve Defendants via the

Amazon messaging service as well as email.[5] The Court analyzes each method's compliance with constitutional due process in turn.

**1. Amazon Messaging Service**

"[C]ourts in other districts have found that service through Amazon.com's messaging service can comport with due process when the movant makes a sufficient showing that the communication is reasonably calculated to reach the defendant, including that a message did not bounce back, defendant responded to the message, or defendant acted in a way that made clear that it received the message." *See Canon Inc. v. Hefeirlandianzishangwuyouxian Gongsi*, 2021 U.S. Dist. LEXIS 258702, at *4 (E.D.N.Y. July 29, 2021) (collecting authority).

Service through the Amazon messaging system comports with due process. Amazon Storefront operators like Defendants are each assigned a unique (and unchanging) Merchant ID and are required by Amazon to set up accounts with its Amazon messaging system to facilitate communication. (*See* Morehart Decls. A–D ¶¶ 3, 8.) None of the Defendants list accurate contact information for their businesses and Plaintiff's exhaustive investigation turned up no viable business addresses for any Defendant. (*See id.* ¶¶ 9, 17.) Each Defendant apparently received and reviewed a message on the Amazon messaging system from Plaintiff's counsel that included copies of the complaint, summons, and other relevant documents—enough to be able to mark the message "closed" on the system. (*See id.* ¶¶ 13–15.) There is no indication the messages failed to reach Defendants. (*See id.* ¶ 15.) To the contrary, considering no other sellers on Amazon list products under the names of the Infringing Brands (*see id.* ¶ 4), the record indicates—at the very least—Defendants each received and reviewed documents meant to inform them of this litigation. That is enough to comport with due process. *See Canon*, 2021 U.S. Dist. LEXIS 258702, at *4. Under these circumstances, communications via the Amazon messaging service are

---

[5] Plaintiff requests service via the Amazon messaging service for Liuyang, but not via email. (Liuyang ECF No. 8 at 16.)

reasonably calculated to reach Defendants and apprise them of the pendency of this litigation.[6]

**2. Email**

Email, as an alternative means of service, can be reasonably calculated to satisfy due process. *See Rio Props.*, 284 F.3d at 1018 ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."). To satisfy due process, email must be "reasonably certain" to inform the defendant of the litigation. *See CoinW6*, 2025 WL 1191570, at *4 (collecting authority). Courts have permitted email service where "(1) there is a likelihood that the email is valid and (2) facts demonstrate the defendant's continued use of the email address is probable." *See id.* at *5 (collecting authority).

Plaintiff does not specify a particular email address for any Defendant, however Plaintiff's investigation uncovered certain email addresses for the trademark owners of Kintillate, Succlin, and MELULUA in Chinese records. (*See* Morehart Decls. A, C–D ¶ 16.) It is apparent the emails are valid, considering the lack of bounceback or other error messages received. (*See id.*) It also appears Defendants are likely to use emails associated with their trademarks, as registered in Chinese records. (*See id.*) Considering Defendants' use of the internet for their businesses, and their apparent obfuscation of attempts to uncover their whereabouts, the Court finds email to be an appropriate method of service under the circumstances. Service via email addresses associated with Chinese registered trademarks of the same brand names allegedly infringing on Plaintiff's patents is reasonably calculated to apprise Defendants of the pendency of this action.

---

[6] It is highly likely Plaintiff's messages via the Amazon platform gave Defendants actual notice of this lawsuit. Weili is even more likely to be aware of the lawsuit, considering it changed its business name and address following Plaintiff's September 8, 2026 communication which included copies of the complaint and summons. (*See* Morehart Decl. A ¶ 19); *See Shenzhen Ruobilin Network Tech., Ltd. v. SJG-LESN*, No. 16-cv-386-WMC, 2016 WL 6988868, at *2 (W.D. Wis. Nov. 29, 2016). In *Shenzhen*, the court granted plaintiff's motion for alternative service via the Amazon messaging system, in part relying on the fact defendants changed their company name shortly after plaintiff emailed them copies of the complaint through the Amazon messaging system. *See id.*

**C. Necessity**

It is within "the sound discretion of the district court . . . [to] determin[e] when the particularities and necessities of a given case require alternat[ive] service of process under Rule 4(f)(3)." *See Rio Props.*, 284 F.3d at 1016. Such circumstances include instances where the plaintiff has shown an "inability to serve an elusive international defendant." *See id.*

Here, Plaintiff has demonstrated the elusiveness of Defendants through its extensive, yet fruitless, effort to locate their whereabouts. In light of these significant, documented efforts, the Court finds service under the proposed alternative methods necessary to avoid further delay. Accordingly, the Court **GRANTS** the motions for alternative service.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's motions for alternative service (ECF No. 6; Consol. Cases ECF No. 8). The Court orders as follows:

(1) Plaintiff is to effectuate service on Defendants via the Amazon messaging system within seven days of this order.

(2) Plaintiff is to effectuate email service on Weili, Xinxiang, and Zhangxuxu within seven days of this order.

(3) Plaintiff shall file a certificate of service within three court days of service on Defendants.

**IT IS SO ORDERED.**

**DATED: October 19, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**